**UNITED STATES of America**

v.

**Andre OLIVER**

**No. CIV.04–1164.**
**No. CRIM.95–207–1.**

United States District Court,
E.D. Pennsylvania.

Aug. 2, 2005.

## MEMORANDUM OPINION AND ORDER

RUFE, District Judge.

On December 6, 1995, following a three-day jury trial before the Honorable Lowell A. Reed, Jr., of the Eastern District of Pennsylvania, Petitioner Andre Oliver was convicted of two counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951. Judge Reed subsequently sentenced Petitioner to twenty years imprisonment, to be followed by three years of supervised release. This case is now before this Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.[1]

## I. Factual Background and Procedural History

Petitioner was convicted in connection with two shopping mall jewelry store robberies that took place eight months apart from each other.

### A. Caldwell Robbery

The first robbery occurred on January 8, 1994, at J.E. Caldwell Jewelers (the

---

1. This case was reassigned to the undersigned from the calendar of Judge Reed on June 14, 2002, pursuant to the Eastern District of Pennsylvania's procedure for random reassignment of cases.

"Caldwell Robbery").[2] According to the trial testimony of Terry Anne Hunter, a sales associate at Caldwell, two men entered the store and acted like customers, making small talk and asking about financing. One of the men asked to see two bracelets that were in a display case. Ms. Hunter pulled the bracelets out of the case, stepped back from the counter, and held them up against her body. At that point, the other man (not the one who asked to see the bracelets), lunged over the display case and ripped the bracelets out of Ms. Hunter's hands, practically pulling her over the display case. Both men then ran out into the shopping mall in which Caldwell's was located. The bracelets were worth $84,000.

After the Caldwell Robbery, the police dusted for fingerprints in the area of the store where the encounter occurred. At trial, Detective Bruce Saville of the Upper Merion Township Police Department testified that fingerprints found at the scene matched Petitioner's.[3] Detective Saville also testified that he presented Ms. Hunter with a photo display of eight individuals on January 13, 1994, and that she selected Petitioner's photograph from that display.[4] Petitioner's trial counsel, Harry Seay, Esquire, did not cross-examine Ms. Hunter or Detective Saville.[5]

### B. *Zales Robbery*

The second robbery occurred on September 6, 1994, at the Zales jewelry store in Franklin Mills Mall (the "Zales Rob-

bery"). At trial, the store manager, Joann Macchioni, testified that she saw three men use a sledge hammer to smash a display case, take a tray of diamond rings and run out of the store, leaving the sledge hammer behind. The rings were valued at $118,000. The day after the Zales Robbery, Ms. Macchioni selected Petitioner's photograph from a photo display presented to her by the F.B.I. At trial, Ms. Macchioni again identified Petitioner as one of the robbers. In addition, Ms. Macchioni testified that Zales obtained its merchandise from Irving, Texas. Petitioner's counsel did conduct cross-examination of Ms. Macchioni.

F.B.I. Agent Steven Heaney, who administered the photo display to Ms. Macchioni, also testified at trial solely about that display. Trial counsel cross-examined Agent Haney as well.

### C. *Procedural History*

On December 6, 1995, following a three-day trial before Judge Reed, a jury found Petitioner guilty on both counts of Hobbs Act robbery. Petitioner was then taken into state custody to answer charges relating to his involvement in an automobile accident that resulted in the death of a 64 year-old woman (while he was evading arrest on January 24, 1995). The state court sentenced Petitioner to serve 1½ to 3 years in prison for the woman's death.

On August 6, 2001, following his release from state custody, Judge Reed sentenced Petitioner to a term of 240 months imprisonment. Because Petitioner had alleged in a *pro se* Motion for a New Trial that his

---

**2.** The record is not entirely clear as to the exact location of Caldwell's. It appears that the store was located in Upper Merion Township, Pennsylvania, based on the involvement of the Upper Merion Township Police Department.

**3.** 12/5/95 N.T. at 26, 35.

**4.** *Id.* at 37.

**5.** The parties stipulated that the Caldwell store manager would have testified that Caldwell's inventory came from outside of Pennsylvania, as one of the elements of a Hobbs Act robbery is that the robbery interfere with interstate commerce. 18 U.S.C. § 1951.

trial counsel was ineffective, he was represented at the sentencing hearing by Mark Wilson, Assistant Federal Defender.

Petitioner timely appealed to the United States Court of Appeals for the Third Circuit, raising the following claims: 1) the indictment failed to properly charge the essential elements of a Hobbs Act robbery; 2) the sentencing court erroneously found that *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), did not apply when it sentenced Petitioner as a career offender; and 3) the sentencing court committed error when it determined by a preponderance of the evidence that Petitioner was a career offender based on state court records from Bucks County. The Third Circuit denied Petitioner's appeal on the merits, and the Supreme Court denied Petitioner's writ of certiorari on March 24, 2003.

On March 17, 2004, Petitioner filed the instant motion, and on April 1, 2004, the Court issued an order directing Petitioner to re-file his petition using the proper form. Petitioner re-filed his petition on April 27, 2004, raising the following claims: 1) ineffective assistance of counsel for failing to object to the joinder of the two robbery counts in a single indictment; 2) ineffective assistance of counsel for failing to conduct an independent factual and legal investigation, including determining whether the robberies were actual Hobbs Act violations; 3) the trial court gave erroneous jury instructions on the elements of a Hobbs Act violation, and ineffective assistance of trial counsel for failure to object to the jury instructions; 4) ineffective assistance of counsel for failing to interview and call trial witnesses with exculpatory evidence as to Petitioner; and 5) ineffective assistance of counsel for failing to properly inform Petitioner of his sentencing exposure as a career offender when advising him about the benefits of a plea agreement with the government.

The government responded to this Petition on August 25, 2004, arguing that all but one of Petitioner's claims were either procedurally defaulted or meritless and that relief should be denied without an evidentiary hearing. The government, however, requested an evidentiary hearing solely on the issue of whether trial counsel rendered ineffective assistance by failing to properly advise Petitioner of his sentencing exposure as a career offender.

The Court appointed George Newman, Esquire, as counsel for Petitioner on November 23, 2004, and on January 4, 2005, scheduled an evidentiary hearing. In the Order scheduling the hearing, the Court instructed the parties to file brief memoranda outlining the evidentiary issues and detailing those issues on which the Court should receive evidence.

On March 23, 2005, Petitioner, through counsel, amended his Petition, now asserting eight claims. Notably absent from the Amended Petition was an ineffective assistance claim relating to counsel's advice on Petitioner's sentencing exposure, the one claim for which the government initially conceded that an evidentiary hearing was warranted. On March 28, 2005, the government filed a response to this Amended Petition and a memorandum detailing on which issues the Court should receive evidence at the hearing.

On July 20, 2005, the Court held an evidentiary hearing. At this hearing the government offered testimony of Petitioner's trial counsel; Petitioner did not offer any evidence. The Court also heard oral argument from counsel for both parties. In response to the Court's inquiry, Petitioner's counsel notified the Court that he did not intend to waive any of the claims Petitioner asserted in his *pro se* Petition when counsel filed the Amended Petition. Accordingly, the Court now addresses the merits of each of the claims Petitioner

raised in both his *pro se* Petition and Amended Petition below.[6]

## II. *Discussion*

### A. Ineffective assistance of trial counsel for not objecting to the court's failure to charge the jury that it must find that Petitioner acted intentionally.[7]

Petitioner argues that his trial counsel was ineffective for not objecting to the trial court's failure to instruct the jury that to convict Petitioner of Hobbs Act violations, it must find that Petitioner acted intentionally. In light of the Third Circuit's "strong preference for reviewing allegations of ineffective assistance of counsel in collateral proceedings under 28 U.S.C. § 2255 rather than on direct appeal,"[8] Petitioner did not waive this claim by failing to raise it on direct appeal.[9]

Nevertheless, to succeed on this claim, Petitioner must satisfy the familiar two prong ineffective assistance test, as set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.[10]

---

6. As set forth in the recent decision in *Armstrong v. United States,* No. Civ.A.04–4077, 2005 WL 724121, at *2 (E.D.Pa. Mar.28, 2005), the court utilizes the following standard of review to address Petitioner's claims:

This Court considers a petition brought pursuant to Section 2255 to ensure that individuals are not imprisoned in violation of the Constitution, and not to review questions of guilt or innocence. Section 2255 does not provide habeas petitioners with a panacea for all alleged trial or sentencing errors. The errors claimed must be constitutional, jurisdictional, a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure. A petitioner is entitled to relief only if he can establish he is in custody in violation of federal law or the Constitution. [internal citations and quotations marks omitted].

7. Petitioner raised the claims in Subheadings A through H in this section in his Amended Petition. Subheadings I and J are taken from Petitioner's original *pro se* Petition.

8. *United States v. Sandini,* 888 F.2d 300, 312 (3d Cir.1989).

9. In its Answer to the Amended Petition, the government argues that jury instruction challenges are not cognizable in § 2255 proceedings. This argument is misplaced because Petitioner is not directly challenging the jury instruction; rather, he claims his trial counsel was ineffective for failing to object to this instruction. *See United States v. Jones,* No. Civ.A.99–3967, 2001 WL 1173980, at *1 (E.D.Pa. Oct.3, 2001) (Yohn, J.) ("Generally, a federal prisoner is procedurally barred from collaterally attacking his sentence under 28 U.S.C. § 2255 insofar as the attack is based upon issues that could have been, but were not, raised on direct appeal. Claims sounding in the ineffective assistance of counsel, however, are an exception to this general rule. Such claims are generally eschewed on direct appeal in this Circuit with the preference being that they be raised for the first time in § 2255 proceedings. Accordingly, ... these claims are properly before the court today.") (internal quotations and citations omitted).

10. *See also United States v. Smack,* 347 F.3d 533, 537 (3d Cir.2003).

In light of this standard, if the trial court's failure to instruct on intent did not prejudice Petitioner, trial counsel's failure to object could not have prejudiced the Petitioner either. The Hobbs Act robbery statute states:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(b) As used in this section -

(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.[11]

The government concedes that a jury should be instructed on "specific intent" in a Hobbs Act robbery case.[12] The government also concedes that the Court did not give such an instruction but argues that this omission was harmless error.[13] "[W]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." [14]

■ In this case, the trial court's failure to instruct on specific intent was harmless error. The evidence was uncontested that these robberies occurred and that the robbers acted with specific intent to steal personal property through violence and fear with the intention of wrongfully keeping the property. The pivotal issue at the trial was the identification of Petitioner as one of the robbers. Furthermore, Petitioner's only defense was that he was not one of the robbers. The government presented sufficient evidence for the jury to find beyond a reasonable doubt that Petitioner had a specific intent to steal, and Petitioner offered no evidence to the contrary.[15] Because lack of a specific intent instruction was harmless error, trial counsel's failure to object to the absence of such an instruction did not prejudice the defense. Accordingly, Petitioner is not entitled to relief on this claim.

---

**11.** 18 U.S.C. § 1951.

**12.** *See United States v. Nedley,* 255 F.2d 350, 352 n. 3, 358 n. 13 (3d Cir.1958).

**13.** *See Neder v. United States,* 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) ("[A]n instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.").

**14.** *Id.*

**15.** *Cf. Nedley,* 255 F.2d at 357–58 (reversing Hobbs Act conviction on sufficiency of the evidence grounds where the record did not contain "an iota of evidence to even indicate, let alone establish, any specific intent on the part of the defendants 'to steal' and 'to take away—with the intention to keep wrongfully' a tractor-trailer").

**B. Ineffective assistance of trial counsel for failing to object to the court's charge that the jury could convict Petitioner if it found that a victim was in fear, rather than instructing the jury that it must find that Petitioner *intended* to create fear in the minds of the victims.**

■ Petitioner contends that the Court erroneously instructed the jury to determine whether the victims were in fear, instead of determining whether Petitioner intentionally caused fear. This claim is an extension of the Petitioner's claim for ineffective assistance for failure to object to absence of specific intent instruction, discussed *supra*, Part II.A., and is equally meritless.

Although intent to cause fear in the victim is a requirement for a Hobbs Act robbery, "[t]he critical inquiry is the effect of the defendant's actions on the victim." [16] Further, "it is axiomatic that a person is held to intend the natural consequences of his acts." [17] In light of this standard, the Court gave the following instruction to the jury:

> In considering whether the defendant used or threatened to use force, violence or fear, you should give those words their common and ordinary meaning and understanding them as you normally would. The violence does not have to be directed at the person whose property was taken.

The use of threat or violence—of force or violence might be aimed at a third person or in causing economic rather than physical injury. A threat may be made verbally or by physical gesture. Whether a statement or physical gesture by the defendant actually was a threat depends upon the surrounding facts.

Fear exists if at least one victim experiences anxiety, concern or worry over expected personal harm or business loss or over financial or job security. The existence of fear must be determined by the facts existing at the time of the defendant's actions.

Your decision of whether the defendant used or threatened fear of injury involves a decision about the victim's state of mind at the time of the defendant's actions. It's obviously impossible to ascertain or prove directly a person's subject to [sic] feeling. You cannot look into a person's mind to see what his state of mind is or was. But, a careful consideration of the circumstances and actions of a person should enable you to decide whether fear would reasonably have been the victim's state of mind. [18]

■ This instruction is virtually identical to the instruction from Sand's Modern Federal Jury Instructions and adequately explains the fear requirement of a Hobbs Act violation. As such, the instruction is proper, and trial counsel could not have been ineffective for failing to object to it. [19]

---

**16.** *United States v. Furey,* 491 F.Supp. 1048, 1063 (E.D.Pa.1980); *see also* L. Sand et al., *Modern Federal Jury Instructions,* Instruction Nos. 50–5, 50–6 (2005) (The comment to instruction 50–6 begins: "The victim's state of mind is of paramount importance in assessing fear.")

**17.** *Id.*

**18.** 12/6/95 N.T. at 55.

**19.** Even if this instruction were incorrect, the harmless error analysis explained in Part II. A., *supra,* would apply. In light of the uncontested and overwhelming evidence presented at the trial, no reasonable juror could find that the robbers did not have the specific intent to steal the jewelry by using force, violence and fear. Thus, any failure by the Court to give a proper instruction was harmless error.

## C. Ineffective assistance of trial counsel for failing to defend against the charge in the Caldwell Robbery and in conceding Petitioner's guilt of that charge.

In his opening statement, trial counsel, Harry Seay, Esquire, told the jury that "you will hear very little cross-examination from me with respect to Ms. Hunter, which is the incident involving Caldwell Jewelers." [20] In fact, Mr. Seay did not cross-examine any of the witnesses related to the Caldwell Robbery. He began his closing argument by reminding the jury: "At the outset, I told you that I had no argument—I'm sorry, not no argument, but I told you that I would be doing very little questioning with respect to the incident at Caldwell's. And, if you recall, I did very little cross-examination of that particular incident." [21] At the end of his closing, Mr. Seay stated, "I've made no argument with respect to Caldwell's." [22]

From the record, it appears that trial counsel's strategy was to contest Petitioner's involvement in the Zales Robbery by contrasting it with the overwhelming evidence implicating Petitioner in the Caldwell Robbery. Trial counsel did not concede guilt, but he declined to contest Petitioner's guilt on the Caldwell Rob-bery. In light of the fingerprint evidence and eyewitness identification presented by the government, Petitioner was "locked in on" the Caldwell Robbery, while trial counsel maintained he "had a possibility of winning" a not guilty verdict on the Zales Robbery. [23]

■ "Strategic and tactical decisions such as which witnesses to call [and] whether to conduct cross-examination are within the province of the attorney after consultation with the client." [24] Here, trial counsel focused his trial strategy on demonstrating the misidentification of Petitioner at the Zales Robbery because it was a different sort of robbery [25] and because there was no fingerprint evidence. [26] His decision not to cross-examine the government's witnesses related to the Caldwell Robbery fell clearly within the realm of reasonable trial strategy which is not subject to second-guessing by this Court in the absence of any evidence that trial counsel failed to consult with Petitioner regarding such decisions. [27]

■ Even if this claim had merit, it is barred by the one-year statute of limitations pursuant to the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Petitioner first raised this claim in his amended § 2255 petition, which he filed on March 23, 2005, two years after his conviction became final. [28]

---

**20.** 12/5/95 N.T. at 54.

**21.** 12/6/95 N.T. at 10.

**22.** *Id.* at 15.

**23.** 7/20/05 N.T. at 16.

**24.** *United States v. Ciancaglini,* 945 F.Supp. 813, 817 (E.D.Pa.1996).

**25.** In the Caldwell Robbery, Petitioner and his cohort asked a salesperson to remove some jewelry from a display case and then lunged at her, grabbed the jewelry and escaped. By comparison, in the Zales Robbery Petitioner and the other robbers simply walked into the jewelry store and used a hammer to smash a display case and steal the jewelry.

**26.** Notably, although Petitioner argues that trial counsel's strategy rendered him ineffective, at no point does he suggest what evidence or arguments could have been made to defend against the Caldwell Robbery.

**27.** *Ciancaglini* 945 F.Supp. at 817 ("We may not use the benefit of hindsight to second-guess tactical decisions made by an attorney unless they are unreasonable.... Moreover, the mere fact that a tactic has been unsuccessful does not necessarily indicate that it was unreasonable.").

**28.** Petitioner's conviction became final on March 24, 2003, when the Supreme Court denied his writ of certiorari.

The Third Circuit has clearly stated that a § 2255 petitioner cannot amend his petition outside the statute of limitations period to add new claims based on facts that were readily available before the statute of limitations expired.[29] This claim is an entirely new claim, and not a clarification of a claim Petitioner asserted in his original Petition.[30] The Court cannot allow this claim to stand because to do so "[would frustrate] the intent of Congress that claims under 28 U.S.C. § 2255 be advanced within one year after a judgment of conviction becomes final unless any of the other circumstances in 28 U.S.C. § 2255 are applicable."[31] Accordingly, in addition to its lack of merit, this claim is procedurally barred by AEDPA's statute of limitations.

### D. Ineffective assistance of trial counsel for failing to move to sever the two counts, which were completely unrelated.

Petitioner contends that trial counsel had no rational basis for not moving to sever the two Hobbs Act robbery counts. Federal Rule of Criminal Procedure 8(a) provides the standard for joinder of separate offenses:

**Joinder of Offenses.** The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged-whether felonies or misdemeanors-are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Federal Rule of Criminal Procedure 14 allows a defendant to seek pretrial severance of counts:

(a) **Relief.** If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts ... or provide any other relief that justice requires.

Petitioner argues that in light of trial counsel's constructive concession of his guilt to the Caldwell Robbery, there could be no rational basis for not asking for a separate trial on the Zales Robbery. However, "inquiry into whether offenses or defendants were properly joined focuses upon the indictment, not upon the proof that was subsequently produced at trial."[32] Therefore, the allegation that trial counsel did not contest one of the robbery charges is irrelevant to the determination of whether Petitioner would have been entitled to severance.

■ If trial counsel had moved for severance, the decision would have been within the discretion of the court. "Mere allegations of prejudice are not enough; and it is not sufficient simply to establish that severance would improve the defendant's

---

**29.** *United States v. Duffus*, 174 F.3d 333, 338 (3d Cir.1999) (affirming district court's denial of motion to amend petition outside of one-year statute of limitations to add new claims, stating that "[a] prisoner should not be able to assert a claim otherwise barred by the statute of limitations merely because he asserted a separate claim within the limitations period.").

**30.** *United States v. Thomas*, 221 F.3d 430, 436 (3d Cir.2000) (holding that Federal Rule of Civil Procedure "15(c)(2) [giving court discretion to permit amendment of complaint] ap-

plies to § 2255 petitions insofar as a District Court may, in its discretion, permit an amendment to a petition to provide factual clarification or amplification after the expiration of the one-year period of limitations, as long as the petition itself was timely filed and the petitioner does not seek to add an entirely new claim or new theory of relief.")

**31.** *Duffus*, 174 F.3d at 337.

**32.** *United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir.2003).

chance of acquittal. Rather, he must demonstrate clear and substantial prejudice resulting in a manifestly unfair trial."[33] Before Petitioner's trial, Judge Reed would have acted well within his discretion in denying a motion to sever.[34] Both of these robberies involved the forceful taking of jewelry from jewelry stores in shopping malls. That the police had found Petitioner's fingerprints at the scene of the Caldwell Robbery, but not at the Zales Robbery, is not sufficient ground for severance. Moreover, the trial court instructed the jury to consider each robbery separately.[35] Because Petitioner was not entitled to severance of the robbery counts, his counsel could not be ineffective for failing to file a motion that would have been denied. Accordingly, Petitioner is not entitled to relief on this ground.[36]

### E. Ineffective assistant of counsel for failing to object to the court's jury instruction that two of the three elements of each count had been established, thus removing determination of the establishment of those elements from the jury.

■ Petitioner argues that trial counsel was ineffective for failing to object to the trial court's instruction that the jewelry he stole was personal property and that it belonged to a business involved in interstate commerce. The trial court instructed the jury as follows:

The essential elements of the offense charged against this defendant are as follows. In order to meet its burden of proof that the defendant committed the offenses for which he is charged, the Government must establish beyond a reasonable doubt each one of the following elements or parts of the crime:

First, that the defendant obtained or took personal property of another from the presence of another, second, that the defendant took this property against the victim's will by means of actual or threatened force, violence or fear of injury, whether immediately or in the future and, third, that as a result of the defendant's action interstate commerce or an item moving in interstate commerce was delayed, obstructed or affected in any way or degree.

With respect to the first element, the obtaining of the personal property of another or from the presence of another, whether the objects constitute personal property is a question of law for me to decide, it is not a question of fact for you the jury to determine. Thus, I instruct you that the objects the defendant is

---

**33.** *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir.1981) (internal citations omitted).

**34.** *See United States v. Thompson*, 574 F.Supp. 651, 652 (E.D.Pa.1983) (denying § 2255 for improper joinder of two bank robberies despite the petitioner's argument that the "robberies were dissimilar because one occurred in Philadelphia and one in Wynnewood; one involved a commercial bank, the other a savings bank; one involved three men, the other a single robber").

**35.** 12/6/95 N.T. at 52–53 ("A separate crime or offense is charged against the defendant in each count of the indictment. Each charge and the evidence pertaining to it should be

considered separately. The fact that you may find the defendant or any other person guilty or not guilty as to one of the offenses charged must not control your verdict as to any other offense charged against the defendant on trial here.").

**36.** Even if trial counsel's performance was deficient for failing to move to sever the two counts, this failure did not prejudice Petitioner. The uncontested and overwhelming evidence was more than sufficient to prove beyond a reasonable doubt that Petitioner participated in both the Caldwell and Zales Robberies. Thus, the consolidation of the two robberies into one trial did not prejudice Petitioner with respect to either conviction.

charged with taking are personal property and you do not have to make a determination of element one—or item one of the elements, element number one.

Your main concern is with the second element of the crime of obstructing interstate commerce by robbery. The second element is the taking of a person's property against his or her will by the use or threatened use of force, violence or fear, as I've previously stated.
. . .
The third element of the crime is the effect the defendant's actions had upon interstate commerce. The parties have stipulated that the conduct of the defendant had the requ—if you find it was the defendant, and that's for you to decide— the conduct of the person who stole the property had the requisite effect upon interstate commerce. Therefore, you must accept this fact as true and consider the third element to be satisfied as you deliberate.

That's a summary as to the three elements. The first two you don't have to—I'm sorry. The first and the third you do not have to decide, it's the second element that you have to decide. And you'll have those in front of you to look at.[37]

The uncontested evidence at trial clearly established that the jewelry stolen was personal property, as opposed to real property. Moreover, Ms. Macchioni testified that Zales received their jewelry from Texas, and the parties stipulated that Caldwell's manager would have testified that Caldwell's received its jewelry from out of state. As discussed above, this trial focused on Petitioner's identification as one of the robbers, not on whether the robberies occurred. Therefore, any error in the trial court's instruction was harmless.[38] Accordingly, Petitioner's trial counsel was not ineffective for failing to object to this instruction, and Petitioner is not entitled to relief on this claim.

**F. The trial court erred in failing to charge the jury on intent, and in misinforming the jury that it should convict if the victim felt fear, as opposed to charging the jury that it should focus on Petitioner's intent to induce fear, and in informing the jury that it need not find two of the three elements of a Hobbs Act violation.**

■ This claim lacks merit for the reasons discussed in Part II.A., B., and E. *supra*. Moreover, even if the trial court's instructions were erroneous, any errors were harmless. In light of the uncontested and overwhelming evidence presented, no reasonable juror could find that the robbers did not have the specific intent to steal the jewelry by using force, violence and fear. Nor could any reasonable juror find that the jewelry stolen was not personal property, or that the robberies did

---

37. 12/6/95 N.T. at 56.

38. Although the trial court's instruction removing the elements of the crime from the purview of the jury was incorrect, the error was harmless. The uncontested evidence demonstrated beyond a reasonable doubt that the robberies involved the theft of jewelry, and that the jewelry stores had received their inventories from out of state. As such, no reasonable juror could have found that the jewelry stolen was not personal property or

that the robberies did not impact interstate commerce. *See United States v. McLaughlin,* 386 F.3d 547, 553–55 (3d Cir.2004) (holding that harmless error review applied when the trial court instructed the jury that the materiality element of counts for perjury and failure to disclose a material fact had been satisfied as a matter of law); *see also Neder,* 527 U.S. at 15, 119 S.Ct. 1827 ("[O]mission of an element is an error that is subject to harmless-error analysis.").

not interfere with interstate commerce. Thus, any failure by the trial court to give a proper instruction was harmless error.[39] In addition, this claim has been waived because trial counsel did not object at trial, and Petitioner did not raise this argument on direct appeal.

### G. Ineffective assistance of counsel for failing to conduct an independent, factual and legal investigation of the government's case in chief.

Petitioner contends that his trial counsel failed to conduct an independent investigation or to call witnesses at trial. "[T]he courts of appeals are in agreement that failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness."[40] However, "[a] claim of ineffective assistance of counsel for failure to investigate must, of course, satisfy both prongs of the *Strickland* test. For a failure to investigate to constitute ineffective assistance, a defendant must show what exculpatory evidence would have been uncovered by further investigation. Even if an attorney is deficient in the decision not to conduct pretrial investigation, a defendant must show a reasonable likelihood that, but for the deficiency, the result of the proceeding would have been different."[41]

In this case, the only potential witness whom Petitioner asserts that his trial counsel failed to interview was Tawasa Harris, the mother of his children. Ms. Harris gave a statement to the police on September 7, 1995, in which she stated that she saw Petitioner leave their residence at around 5:00 p.m. the day before, the date of the Zales Robbery, carrying a bag containing three pairs of gloves, three hoods and a hammer. She saw Petitioner enter a car with two other African–American males and drive in the direction of the expressway. She also stated that she thought he was responsible for the Zales Robbery. Ms. Harris later recanted her statement, stating that she had been lying to get back at Petitioner for seeing another woman. Petitioner now claims his trial counsel was ineffective for failing to interview Ms. Harris or call her as a witness at trial.

■ Petitioner's claim that counsel was ineffective for failing to interview Ms. Harris lacks merit. Notwithstanding Petitioner's allegations about the value of Ms. Harris' testimony, the decision whether to call Ms. Harris as a witness fell within the province of trial counsel after consultation with Petitioner.[42] To refute Petitioner's self-serving allegations that trial counsel did not interview Ms. Harris or consider calling her as a witness, the government entered into evidence a declaration from Petitioner's trial counsel containing the following:

Prior to trial, I reviewed the discovery in this case and was aware of the statement that Andre Oliver's girlfriend, Tawasa Harris, had given to the police regarding Andre Oliver's involvement in the robbery of the Zales Jewelry Outlet Store ("Zales"), located at Franklin Mills Mall, Philadelphia, Pennsylvania. When I was later advised by Ms. Harris that

---

**39.** *Neder,* 527 U.S. at 15, 119 S.Ct. 1827; *McLaughlin,* 386 F.3d 547.

**40.** *United States v. Gray,* 878 F.2d 702, 711 (3d Cir.1989).

**41.** *United States v. Williams,* 166 F.Supp.2d 286, 306 (E.D.Pa.2001) (internal citations and quotations omitted).

**42.** *Ciancaglini,* 945 F.Supp. at 817.

she wished to change her statement, it was my considered opinion based on my experience as a trial lawyer that she could not help his case by recanting her prior statement to the police about Oliver's involvement in the robbery of Zales. Accordingly, I advised Andre Oliver that I would not be calling Ms. Harris as a trial witness and Andre Oliver, after pretrial consultation, agreed with my assessment that it would not be in his best interest to call Ms. Harris as a witness. I also advised Ms. Harris that I would not be calling her as a trial witness because her testimony would hurt, rather than help Andre Oliver's defense.[43]

The Court must give great deference to trial counsel's decision not to call Ms. Harris as a witness.[44] Furthermore, even if Ms. Harris' testimony could have helped Petitioner at trial, it is more likely that her testimony would have impacted negatively on Petitioner's case, as the jury most certainly would have also heard Ms. Harris' initial statement implicating Petitioner in addition to her subsequent recantation.

Petitioner does not name any other potential witnesses or any other evidence that trial counsel would have discovered had he conducted a more thorough investigation. Because any failure of trial counsel to conduct a pretrial investigation did not prejudice Petitioner, he is not entitled to relief on this claim.

**H. Whether this Court should vacate the judgment of sentence and resentence Petitioner, in light of the Supreme Court's recent decision in *Shepard v. United States*, —— U.S. —— (3/7/05), which held that only a plea agreement, a charging document to which a defendant pleads guilty, admission by a defendant, or similarly reliable facts may be used to increase a sentencing range, which is precisely the issue that Petitioner raised on direct appeal in the Third Circuit Court of Appeals.**

With this claim, Petitioner seeks to invalidate his sentence in light of the recent decision by the United States Supreme Court in *United States v. Booker*, 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). However, since Petitioner filed his Amended Petition, the Third Circuit has held that "*Booker* does not apply retroactively to initial motions under § 2255 where the judgment was final as of January 12, 2005, the date *Booker* was issued."[45] Petitioner's conviction became final on March 23, 2003, when the Supreme Court denied his petition for writ of certiorari, more than nineteen months before *Booker* was issued. Therefore, to the extent Petitioner seeks to invalidate his sentence in light of *Booker*, this claim must be denied.

Neither the Third Circuit nor the Supreme Court have explicitly ruled whether the holding in *Shepard v. United States*, —— U.S. ——, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), applies retroactively, although such a ruling seems warranted.[46] Never-

---

**43.** 7/20/05 N.T. at 14, 27, Exh. G–1.

**44.** *See generally United States v. Hudson*, No. Civ.A.99–4817, 2003 WL 23162435, at *4 (E.D.Pa. Dec.31, 2003) ("In evaluating the reasonableness of counsel's performances, courts must consider 'counsel's perspective at the time of the alleged error ... in light of all the circumstances, and the standard of review is highly deferential.' ") (quoting *Kimmelman*

*v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)).

**45.** *Lloyd v. United States*, 407 F.3d 608, 616 (3d Cir.2005).

**46.** *Cf. Armstrong*, No. Civ.A.04–4077, 2005 WL 724121, at *5 (E.D.Pa. Mar.28, 2005) (in an opinion issued before *Lloyd*, surmising that since *Shepard* rests on *Apprendi*, the same retroactivity arguments apply).

theless, Petitioner fails to demonstrate how *Shepard* helps him, assuming it applies retroactively. In *Shepard,* the Supreme Court held that "enquiry under the ACCA [Armed Career Criminal Act, 18 U.S.C. § 924(e)] to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." In so holding, the Court held that the sentencing court could not go beyond the court records and rely on police reports to determine whether the defendant had pleaded guilty to generic burglary.

The holding in *Shepard* did not change the Supreme Court's holding in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that *"[o]ther than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." [47] Thus, under *Apprendi,* a sentencing judge can make a finding by a preponderance of the evidence that a prior conviction qualifies a defendant for a sentencing enhancement. In *Shepard,* the Supreme Court articulated what evidence the sentencing judge can consider when making a finding about a prior conviction.

Here, the government included with its sentencing memorandum several documents from the Criminal Court of Bucks County, Pennsylvania, including: 1) an information charging "Andre Ponzo," whom Petitioner admitted was himself, with five counts, including robbery and conspiracy to commit robbery; and 2) two documents signed by Andre Ponzo indicating a plea of guilty to all counts.[48] At the sentencing hearing, Petitioner testified that one of the two signatures was his signature, but testified that he had pleaded guilty to one of the non-violent offenses charged, and not to robbery. After considering the attachment to the sentencing memorandum and Petitioner's testimony, the sentencing court rejected Petitioner's testimony regarding the events of his guilty plea and found that Petitioner had pled guilty to all counts in the information, including robbery. The sentencing court further found that the felony to which Petitioner pleaded guilty was a crime of violence. The court concluded that this conviction, taken together with another robbery conviction of Petitioner on December 19, 1989, qualified Petitioner for career offender status.[49]

 In light of these facts, *Shepard* is of no help to Petitioner. In accordance with *Apprendi* and *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the sentencing court found by a preponderance of the evidence that Petitioner pleaded guilty to robbery in Bucks County, Pennsylvania, on December 4, 1989. The Third Circuit has explicitly held that "robbery is necessarily a crime of violence," [50] so the sentencing

---

47. *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added); *see also Booker,* 125 S.Ct. at 756 ("Any fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." (emphasis added)).

48. *See* Exh. 1 to the Sentencing Mem.

49. 8/6/01 N.T. at 36–40.

50. *United States v. McAllister,* 927 F.2d 136, 138–39, n. 4 (3d Cir.1991); *see also* 18 Pa. Cons.Stat. Ann. § 3701 ("A person is guilty of robbery if, in the course of committing a theft, he: (i) inflicts serious bodily injury upon another; (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; (iii) commits or threatens immediately to commit any felony of the first or

court did not have to look beyond the judicial record to determine whether Petitioner's prior conviction qualified him for career offender status. Therefore, this case is easily distinguishable from *Shepard,* where the issue was whether the petitioner had pleaded guilty to generic burglary as opposed to non-generic statutory form of burglary that would not have qualified as a violent felony under ACCA. Accordingly, even assuming that *Shepard* applies retroactively, it does not apply here.

## I. Trial counsel rendered ineffective assistance by failing to contest the characterization of the two robberies as Hobbs Act violations.

 With this claim, Petitioner contends that the government's evidence was insufficient to find that his conduct affected interstate commerce because the robberies involved individuals, not businesses engaged in interstate commerce. This argument is entirely without merit. Under the Hobbs Act, "[t]he term 'commerce' means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction." The uncontested evidence at trial demonstrated that Peti-

tioner was involved in the robberies of two Pennsylvania jewelry stores that received their inventories from outside of the Commonwealth. That Petitioner physically took the jewelry from employees of these stores does not change the fact that he was robbing the stores, not the employees themselves. This evidence is more than sufficient to prove that the robberies satisfied the interstate commerce element of Hobbs Act robberies.[51]

## J. Trial counsel rendered ineffective assistance by failing to advise Petitioner of his potential sentencing exposure as a career offender under the Sentencing Guidelines and the benefits of entering into a plea agreement with the government that would have given him credit for acceptance of responsibility.

 In support of this claim, Petitioner attached to his *pro se* Petition affidavits from his mother and grandmother in which they claim that Petitioner's trial counsel told them and Petitioner that Petitioner's sentencing exposure if he went to trial and lost was only seven to nine years imprisonment. At the evidentiary hearing, trial counsel testified that he never would have told Petitioner that he would receive such a sentence if he was convicted at trial.[52] In light of Mr. Seay's substantial federal criminal trial experience and knowledge of the Sentencing Guidelines,[53] the Court finds Mr. Seay's evidentiary hearing testi-

---

second degree; (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or (v) physically takes or removes property from the person of another by force however slight.")

**51.** *United States v. Traitz,* 871 F.2d 368, 390 (3d Cir.1989) ("Congress intended, by enacting the Hobbs Act, to punish interference with interstate commerce to the fullest extent possible under its constitutional power. Consistent with this view, other courts of appeal

have recognized that the impact on interstate commerce necessary to satisfy the Hobbs Act required is *de minimis.*" (internal citations and quotations omitted)).

**52.** 7/20/05 N.T. at 24; Exh. G–1.

**53.** Mr. Seay has practiced almost exclusively as a criminal defense attorney since graduating from law school in 1967, and approximately twenty-five to thirty percent of his cases have been in federal court. 7/20/05 N.T. at 11.

mony credible and does not accept the affidavits of Petitioner's family members.[54] Accordingly, Petitioner is denied relief on this claim.

## III. *Conclusion* ·

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 is denied.

An appropriate Order follows.

### *ORDER*

**AND NOW,** this 2nd day of August, 2005, after a hearing, and upon consideration of Petitioner Andre Oliver's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255 [Doc. # 98] and Memorandum in support thereof [Doc. # 99], the government's Response thereto [Doc. # 101], and of the entire record in this matter, and for the reasons set forth in the attached memorandum opinion, it is hereby **ORDERED** that the Petition is **DENIED** and **DISMISSED WITH PREJUDICE.**

It is further **ORDERED** that because the Petition does not make a substantial showing of the denial of a constitutional right, the Court declines to issue a Certificate of Appealability.

The Clerk of Court shall mark this case **CLOSED** for statistical purposes.

It is so **ORDERED.**

---

**54.** Petitioner did not present any witnesses at the evidentiary hearing.