hLOBRANO, Judge.
Defendants, Kermit Green, Charles Holmes, Steven Taylor and Tremell Condolí, were each charged by grand jury indictment with one count of aggravated kidnapping, a violation of Louisiana Revised Statute 14:44.
All four defendants were arraigned on January 20, 1993 and pled not guilty.
On April 28, 1993, various motion hearings were held. The trial court granted the motion to suppress the physical evidence, which applied to all four defendants. The trial court denied the motion to suppress the pretrial identifications of Taylor and Condolí.
On July 6, 1993, a jury trial was held as to Green, Holmes and Taylor.[1] Taylor was found guilty as charged. Green and Holmes were convicted of second degree kidnapping, a violation of Louisiana Revised Statute 14:44.1.
On July 20, 1993, the trial court granted a post-verdict judgment of acquittal filed by Holmes, reducing his conviction to simple kidnapping. The court then sentenced Holmes to five years at hard labor. No writs were taken by the State.
|2On July 21, 1993, the trial court denied Green’s motion for a new trial and Taylor’s post-verdict motion for acquittal. All sentencing delays were waived by Green. Green was sentenced to fifteen years at hard labor, the first two years to be served without the benefit of probation, parole, or suspension of sentence, to run consecutively.
The trial court sentenced Taylor to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Multiple bills were filed as to Green and Holmes. The trial court deferred action without date.
*938 An errors patent brief was filed by counsel on behalf of all three defendants. In addition, Green and Taylor filed pro-se briefs. FACTS:
On November 17,1992, Christal James and her fourteen-month old son, Lucky James, were residing in the home of their aunt, Mary James on St. Anthony Street. Also residing in the home were Christal’s cousin, Kristy James, and Kristy’s young daughter, Krischelle.
While Christal was in the bathroom, Kris-ehelle came running toward the rear of the house saying that she had seen a boy with a gun. Christal then saw two men inside the house. One of the men asked “Where’s A1?”, referring to Alaric Starks, Lucky’s father. Christal responded that she did not know where A1 was. One of the men then told her to call him. She responded that she did not have a telephone. At that point, the man in the bathroom with Christal said that they were going to take the baby. He told her they wanted a kilo of cocaine and $10,000.00 for the baby’s return. The other man, who was standing between the kitchen and a bedroom watching Mary and Kristy James, then said, “No, forty ^thousand.” The men then ordered Kristy to gather some things for the baby. They ordered the women not to scream or call the police, then left with the baby.
After the men left, Christal James attempted to locate Alaric Starks. She eventually spoke to him by phone. He advised her that he was not going to get involved and to call the police, which she did. Because the kidnapping involved a child, detectives from the Juvenile Division handled the investigation.
Detective Steven Day went to the home of Starks’ mother where Starks resided. With Mrs. Starks’ permission, Detective Day installed recording equipment and a caller ID unit on the telephone. With this equipment, detectives hoped to determine the location of calls placed by the kidnapper to the home. A total of five phone calls were recorded and traced to various pay phones in the New Orleans East area. Narcotics officers, cooperating with juvenile detectives, were informed by radio of the pay phone locations as the calls .were being placed. The narcotics officers were able to set up surveillance on the pay phones in the area. Detective Justin Vitrano took up a position in the 3900 block of Chef Highway. Vitrano was informed by juvenile detectives that a call was being placed from a pay phone in front of a liquor store in that block.
Detective Vitrano observed the three defendants, along with two other men, standing around the phone. Vitrano watched the five men walk to and drive away in a red Impala with a white top. Vitrano then went to the phone and confirmed that it has the same number as was recorded on the caller ID unit in the Starks’ home. Vitrano then alerted the patrolling narcotic units. The men were followed to the Desire Housing Project. When the men parked and exited the car, they were surrounded by police. Of the five, only Holmes escaped. The other suspects were separated and questioned as to the whereabouts of the baby. Patrick UMorton, one of the suspects, made a statement indicating that he knew the location where the baby was being held. He then led police to an apartment in the project where the baby was found unharmed. The apartment tenant, Charmaine Holmes (no relation to defendant, Charles Holmes), Charon Davis and Erica Jones, who were also in the apartment, were all arrested. All charges against the three women were later dropped.
At trial, Christal James testified that both kidnappers were armed with guns. She testified that she identified Condolí and Taylor as the two men who abducted her child.
Mary James was unable to identify either man because as soon as they passed her, she closed her eyes and kept them closed.
Patrick Morton testified as a State witness. He entered a guilty plea to accessory after the fact. Morton testified that four days before the kidnapping, his cousin, Kermit Green, came to see him. At the time, Morton was involved in a relationship with Kristy James. Green questioned Morton as to whether he knew Alaric Starks, whether Starks kept drugs at the James house and about Starks’ pattern of visits to the home. *939 Morton told Green that no drugs were kept there.
On the day of the kidnapping, at approximately 9:00 a.m., Green again visited Morton. He was accompanied by Tremell Condolí and Steven Taylor. Again, Morton was questioned about whether Starks kept drugs at the James’ house. Green indicated that Starks owed Condolí and Taylor money. The three men left. They returned at approximately 11:30 a.m. The men told Morton that he was not lying, that there were no drugs at the James house. They also informed him that they had taken Starks’ son and that he was going to give them their money. The three men then left stating that they were going to telephone | gStarks. Morton then went to the James’ house where he learned the details of the kidnapping. The police were there. Morton did not disclose what he knew or that Green was involved.
Late that afternoon, Morton returned home. The kidnappers again came to his house. Morton tried to convince them to take the child back but was unsuccessful. He then accompanied the men into the project where the child was being held. As they went up to the apartment, Morton saw defendant Holmes in the doorway. Morton saw the baby and picked him up. He noticed that the baby, who had asthma, did not look well. All five men then left the apartment and together drove around. They stopped at different pay phones calling and speaking to Starks’ mother. Morton admitted that he made one of the phone calls to let Mrs. Starks know that the baby was sick. He stated he was unsure if Green or Taylor made any calls, although he was sure that they got out of the car. No defense witnesses testified.
Steven Taylor, pro se, asserts the following assignments of error:
1) The evidence was insufficient to support his conviction;
2) The pre-trial identification was suggestive;
3) He was denied effective assistance of counsel.
Kermit Green, pro se, asserts the following assignments of error:
4) He was compelled to stand trial in readily identifiable prison clothing;
5) Defendant was denied due process when his family was excluded from the courtroom during the trial.
Charles Holmes, through counsel, asks only for an errors patent review.

J¿ASSIGNMENT OF ERROR 1:

Defendant, Steven Taylor, asserts that the evidence was insufficient to convict him of aggravated kidnapping.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4th Cir.1991). However, the reviewing court may not disregard its duty to consider whether the evidence is constitutionally sufficient simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. Id. supra. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. Id. supra. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green, supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *940 State v. Shapiro, 431 So.2d 872 (La.1982). |7The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
To support a conviction for aggravated kidnapping, the State must prove beyond a reasonable doubt that (1) defendant forcibly seized and carried a person from one place to another; or (2) enticed or persuaded a person to go from one place to another; or (3) imprisoned or forcibly secreted a person. One of these elements must have been completed with the intent to force the victim or another person to give up something of value in exchange for the victim’s release. La.R.S. 14:44.
In the instant case, there is ample evidence that Lucky James was forcibly seized from his mother and carried from her home to an apartment in the Desire Housing Project. In addition, there is ample evidence to show that the child was seized by the kidnappers with the intent to force Alaric Starks to give up money and drugs in exchange for his son’s release. The issue is whether the evidence was sufficient to prove that Steven Taylor was one of the men who seized the child and demanded money for his return.
Christal James identified defendant as one of the two men who entered her home armed with a gun. Steven Taylor was identified as the man who paced between the kitchen and the bedroom, watching Mary and Kristy James. Taylor is not the man who physically picked up Lucky James and carried him from the ^premises. Taylor argues that this fact precludes a finding that he forcibly seized the child.
Louisiana Revised Statute 14:24 provides that “All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.” See, State v. Brooks, 505 So.2d 714 (La.1987), cert. denied Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987); State v. Watson, 529 So.2d 94 (La.App. 4th Cir.1988), writ denied 535 So.2d 740 (La.1989).
The evidence at trial established that Steven Taylor held two occupants of the house at gunpoint while Condolí demanded that Christal James communicate with A1 Starks and inform him that they wanted money in exchange for the baby. Taylor was armed and present in the bedroom when Kristy James, at the kidnappers’ instructions, put some of the baby’s things in a bag. He left with Condolí and the baby. All of the elements of aggravated kidnapping were established as was Steven Taylor’s identity as a principal in the offense.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR 2 AND S:

Steven Taylor asserts the pre-trial identification by Christal James was unnecessarily suggestive. Specifically, he argues that James’ testimony was false and inconsistent because her initial description conflicted with her trial testimony. Defendant does not assert that the procedure used for identification was suggestive.
A review of the transcript of the motion to suppress the identification reflects that the pre-trial photographic line-up procedure was not suggestive. | gChristal James testified that three days after the crime, police officers showed her a number of photographs to review for possible identification. The officers did not threaten her to make an identification. She selected the photos of Tremell Condolí and Steven Taylor and signed the back of each photo.
Defendant also asserts that the alleged inconsistencies in James’ description, especially the height discrepancy, supports his contention that the State encouraged her to identify him as the kidnapper despite the discrepancies. This argument cannot be considered by this Court because the police report attached to defendant’s brief, containing *941 the alleged inconsistent statements, was not made part of the trial record.
As an adjunct to this argument, defendant asserts his counsel was ineffective because he failed to impeach James’ trial testimony with her earlier inconsistent description of the Mdnapper.
Defendant also contends he was denied effective assistance of counsel because his counsel failed to call him as a witness so that he could establish his alibi (which he does not disclose); that he had civilian clothes available but was tried in prison clothing and that his counsel faded to investigate, interview and subpoena witnesses.
The issue of ineffective assistance of counsel is a matter more properly raised in an application for post-conviction relief to be filed in the trial court where a full eviden-tiary hearing can be held. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Sparrow, 612 So.2d 191 (La.App. 4th Cir.1992). Only when the record contains the necessary evidence to evaluate the merits of the claim can the claim be addressed on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State 10v. Kelly, 92-2446 (La.App. 4th Cir. 7/8/94), 639 So.2d 888, writ denied, 94-2087 (La. 1/6/95), 648 So.2d 921.
The merits of defendant’s claims of ineffective assistance of counsel cannot be fully determined from the record before us because they concern the possible trial strategy of defendant’s counsel. The record does not reflect why counsel did and did not do what defendant argues. Furthermore, the issue of the differences in the physical description of defendant before trial and during trial require a factual determination such as the alleged height discrepancy. Thus, defendant should assert these claims in an application for post-conviction relief so that the necessary evidentiary hearing can be held.

ASSIGNMENT OF ERROR h:

Kermit Green also asserts a claim of ineffective assistance of counsel. Green complains that he was compelled to stand trial in prison clothing even though he informed his trial counsel that his sister brought civilian clothing for him to wear. A trial court has not compelled a defendant to stand trial in prison clothing if the court is not made aware that defendant has civilian clothing available or otherwise asserts his rights. See, State v. Williams, 594 So.2d 476 (La.App. 4th Cir.1992). As to defendant’s contention that trial counsel was informed that civilian clothing was available, an eviden-tiary hearing is required for consideration of this claim. For the same reasons assigned in the previous assignment of error, defendant should assert that claim in an application for post-conviction relief.
I ^ASSIGNMENT OF ERROR 5:
Kermit Green asserts that he was denied due process of law and equal protection because certain members of his family were excluded from the court room during the trial. However, defendant states that these individuals would have testified regarding defendants’ whereabouts on the day of the crime. As potential witnesses, their exclusion was required by the sequestration order given by the trial judge at the beginning of the trial. See, La.C.E. art. 615.
This assignment of error is without merit.

ERRORS PATENT:

Counsel for all three defendants filed a brief requesting only a review of the record for errors patent. Counsel complied with the procedures outline in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by this Court in State v. Benjamin, 573 So.2d 528 (La.App. 4th Cir.1990). Counsel’s detailed review of the procedural history of the case and the facts of the ease indicated a thorough review of the record. Counsel has moved to withdraw because he believes, after a conscientious review of the record, that there are no non-frivolous issues to be raised on appeal.
Counsel has reviewed all available transcripts and has found no trial court rulings which arguably support the appeal. A copy of the brief was forwarded to each defendant and this Court informed each defendant that he had the right to file a brief on his own behalf. Defendants Taylor and Green filed *942 pro se briefs. Defendant Holmes did not file a brief.
As per State v. Benjamin, this Court has performed an independent, thorough review of all the pleadings filed in the district court, all minute entries | i2of the district court proceedings, the bill of information, and all transcripts contained in the appeal record. The defendants were properly charged by grand jury indictment with a violation of Louisiana Revised Statute 14:44 and the indictment was signed by the grand jury foreman. The defendants were present and represented by counsel at arraignment, all hearings, trial and sentencing. The sentences are legal in all respects. The State proved elements of the crime beyond a reasonable doubt.[2]
For the reasons assigned above, defendants’ convictions and sentences are affirmed. Defendants’ counsel’s motion to withdraw is granted.
AFFIRMED.

. The trial court severed the trial of Condolí. Following a bench trial, Condolí was found guilty as charged. No appeal has been lodged.

. As noted previously, the trial court reduced the verdict for Charles Holmes to simple kidnapping. The evidence against Kermit Green was sufficient to support a conviction of guilty as charged of aggravated kidnapping, although the jury returned a legal verdict of second degree kidnapping. See, State v. Armstrong, 587 So.2d 168 (La.App. 4th Cir.1991).