

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-20-2004

# USA v. McLaughlin

Precedential or Non-Precedential: Precedential

Docket No. 00-2550

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. McLaughlin" (2004). *2004 Decisions*. Paper 167.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/167

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

_____

No. 00-2550

_____

UNITED STATES OF AMERICA

v.

STEVEN McLAUGHLIN,
                            Appellant

_____

On Appeal from the United States
District Court for the Eastern District of
Pennsylvania
(D.C. No. 98-cr-00545-1)
District Judge:  Hon. Jan E. DuBois

_____

Submitted Under Third Circuit LAR
34.1(a) October 7, 2004

Before: SLOVITER, VAN
ANTWERPEN and COWEN, Circuit
Judges

(Filed:  October 20, 2004)

_____

Stephen James Binhak
Key Biscayne, FL 33149

Attorney for Appellant

Patrick L. Meehan
        United States Attorney
Laurie Magid
        Deputy United States Attorney
        for Policy and Appeals
Robert A. Zauzmer
        Assistant United States Attorney
        Senior Appellate Counsel
Bea L. Witzleben
        Assistant United States Attorney
Kathy A. Stark
Philadelphia, PA 19106

        Attorneys for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

This is an appeal by Steven McLaughlin from his conviction and sentence following a jury trial on a superceding indictment charging him with conspiracy in violation of 18 U.S.C. § 371, multiple counts of stealing and embezzling union funds in violation of 29 U.S.C. § 501(c) and 18 U.S.C. § 2, one count of failing to disclose material facts in a report filed with the Secretary of the Department of Labor ("DOL") in violation of 29 U.S.C. §§ 431, 439(b), and perjury in violation of 18 U.S.C. § 1623.

The principal issue presented is whether the District Court erred by instructing the jury that materiality was a question of law, rather than fact, for purposes of 18 U.S.C. § 1623 and 29 U.S.C. § 439(b) and, if so, whether such

error was harmless.[1]

# I.

McLaughlin served as President of the Eastern Montgomery County Area Local No. 2233 ("EMCAL"), an affiliate of the American Postal Worker's Union ("APWU"), from January 1992 until December 1994. APWU, a national labor union whose membership consists of various United States Postal Service employees, has five regional offices, which are further divided into approximately 1,300 geographically-based sections called "Locals." EMCAL is the Local for postal employees operating in Eastern Montgomery County, Pennsylvania.[2]

The Government presented evidence of McLaughlin's expenditures for car repairs, local hotel stays, and purchases of electronic equipment paid for

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231; this court has jurisdiction pursuant to 28 U.S.C. § 1291.

[2] The indictment also charged Nancy Zemo, the former Secretary/Treasurer of EMCAL, with conspiracy to steal and embezzle funds from the union and multiple counts of stealing and embezzling union funds. She was acquitted of four of the substantive counts and convicted of all the other charges. Her convictions are not at issue on this appeal.

by union funds on a charge card issued to McLaughlin and EMCAL. The Government argued that these purchases were for McLaughlin's personal benefit and hence not authorized under EMCAL's constitution. In addition, the Government attempted to prove that McLaughlin had embezzled from EMCAL by causing unauthorized payroll checks to be issued in his name and by causing EMCAL to overpay him for health insurance, life insurance, and retirement benefits. Finally, the Government also sought to prove that McLaughlin had filed a report, known in labor parlance as an "LM2 report," with the DOL in 1993 in which he had failed to disclose his receipt of certain benefits and reimbursements from EMCAL as required by law.

In his defense, McLaughlin testified that other individuals affiliated with EMCAL had also used the charge card, and introduced as Defense Exhibit 2 the customer's carbon copy of a receipt on EMCAL's charge card for a purchase at a Staples Office Supplies store with a signature purporting to be that of James Martello, an EMCAL executive. McLaughlin testified Martello had used the card and then had given him the receipt.

On cross-examination, the Government produced the merchant's copy of the receipt, identical except that it bore McLaughlin's signature rather than Martello's. On cross-examination, McLaughlin conceded that, apart from the disparate signatures, the two documents

2

appeared identical.

The jury was unable to reach a unanimous verdict, the District Court declared a mistrial, and the grand jury returned a superceding indictment charging the same offenses as the original indictment with the addition of a perjury count based on McLaughlin's testimony regarding Martello's use of the charge card at Staples.

On the retrial, McLaughlin's counsel informed the Court that he was unable to locate the Staples receipt previously admitted as Defense Exhibit 2. The Court informed the parties that it had made and retained photocopies of all the exhibits, including Defense Exhibit 2, and McLaughlin's defense counsel stated that he would not object to the use of such a copy at the trial.

Before instructing the jury, the District Court advised the parties it intended to instruct the jury that the issues of materiality with respect to the perjury and false reporting charges were questions of law that it had decided in the United States' favor. Defense counsel objected, arguing that materiality was a question of fact for the jury. The District Court overruled this objection. With respect to the charge that McLaughlin had failed to disclose a material fact to the DOL, the District Court instructed the jury that:

> The second element of the crime . . . requires that the Government prove, beyond

a reasonable doubt, that the LM2 report for 1993 contained false statements or representations of material facts or []omitted material facts.

I instruct you, as a matter of law, that statements on the 1993 LM2 report of expenses, including reimbursed expenses, which must be set forth on Schedule 9 of the report are material facts under the statute. I instruct you on that as a matter of law. So you need not concern yourself with the issue of materiality.

Supp. App. at 1030. Similarly, with respect to the 18 U.S.C. § 1623 charge, the District Court instructed:

> The question whether the alleged false testimony was material is a question of law for me to decide. It is not a question of fact for you, the jury, to determine.
>
> And I instruct you that the matters as to which it is charged that defendant, Steven McLaughlin made false statements . . . were material to the proceedings before the court. Thus, you need not decide the question

3

of materiality.

Supp. App. at 1037. Thereafter, the jury convicted McLaughlin on all charged counts.

Following the sentencing hearing, the Court sentenced McLaughlin to serve a total period of incarceration of twenty-four months. In addition, the District Court imposed a total of three years supervised release, restitution in the amount of $18,000, and a special assessment of $1,050.[3]

This appeal followed.

## II.

We generally review jury instructions under the abuse of discretion standard. Appellate review, however, is plenary when the question is whether a district court's instructions misstated the law. Walden v. Georgia-Pacific Corp., 126 F.3d 506, 513 (3d Cir. 1997).

## A.

In United States v. Gaudin, 515 U.S. 506 (1995), the Supreme Court of the United States held that "materiality" is an element of 18 U.S.C. § 1001 ("makes any materially false, fictitious, or fraudulent

---

[3] McLaughlin has completed his service of the period of incarceration, and is currently serving his period of supervised release.

statement"), and thus, under the Fifth and Sixth Amendments, materiality is a question that must be determined by a jury rather than a judge in an 18 U.S.C. § 1001 proceeding. Two years later, relying on its decision in Gaudin, the Court in Johnson v. United States, 520 U.S. 461 (1997), held that materiality is an element of 18 U.S.C. § 1623 ("knowingly makes any false material declaration"), and therefore, it is a question for the jury. Based on these precedents, we conclude that the District Court's instruction removing from the jury the issue of materiality in its consideration of McLaughlin's violation of 18 U.S.C. § 1623 was an error of law.

In contrast to 18 U.S.C. § 1623, neither the Supreme Court nor this court has decided whether materiality is an element of 29 U.S.C. § 439(b). That statute provides:

> Any person . . . who knowingly fails to disclose a material fact, in any document [or] report . . . required under . . . this subchapter shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

29 U.S.C. § 439(b) (emphasis added). As is true respecting 18 U.S.C. § 1623 and 18 U.S.C. § 1001, the statutory text of 29 U.S.C. § 439(b) expressly requires that the fact allegedly withheld be "material." Compare Johnson, 520 U.S. at 465 ("The statutory text expressly requires that the

false declaration be 'material.' Gaudin therefore dictates that materiality be decided by the jury, not the court."), with United States v. Wells, 519 U.S. 482, 489-91 (1997) (holding that "materiality" is not element of 18 U.S.C. § 1014, a statute that does not contain materiality requirement in text). In other words, the logic of Gaudin and Johnson compels a finding that materiality is an element of 29 U.S.C. § 439(b). See United States v. W. Indies Transp., Inc., 127 F.3d 299, 305 (3d Cir. 1997) ("Failure to submit the issue of materiality to the jury was error. . . . That Gaudin involved perjury under 18 U.S.C. § 1001 rather than 18 U.S.C. § 1546, the relevant statute here, is not significant given the identical character of the materiality element in both perjury statutes.") (emphasis added).

In sum, "materiality" is an element of both 29 U.S.C. § 439(b) and 18 U.S.C. § 1623. Thus, the District Court's decision to resolve the issue as a matter of law, rather than submitting it to the jury as a question of fact, violated McLaughlin's rights under the Fifth and Sixth Amendments. The instructions, therefore, were in error.

**B.**

Rule 52(a) of the Federal Rules of Criminal Procedure, which governs direct appeals from judgments of conviction in the federal system, provides that "[a]ny error, defect, irregularity or variance that does not affect substantial rights must be disregarded." Although Rule 52(a), by its terms, applies to all errors where a proper objection is made at trial, the Supreme Court has recognized a limited class of fundamental constitutional errors that "defy analysis by 'harmless error' standards." Arizona v. Fulminante, 499 U.S. 279, 309 (1991). Errors of that type are so intrinsically harmful as to require automatic reversal without regard to their effect on the outcome. For all other constitutional errors, the Supreme Court teaches that reviewing courts must apply Rule 52(a)'s harmless-error analysis and must disregard errors that are harmless "beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967).

In Neder v. United States, 527 U.S. 1 (1999), the Court, relying on Gaudin, held that materiality is an element of the federal tax fraud, mail fraud, wire fraud, and bank fraud statutes under which the appellant had been convicted. Thus, the Court held that the district court's jury instructions, which had resolved as a matter of law the materiality elements of those charges, were in error.

Although the defendant there (as here) had lodged a timely objection to the erroneous instructions regarding materiality, the Court distinguished the error at issue – a jury instruction that omitted materiality as an element of the offense – from the constitutional violations it had previously found were not subject to harmless-error review. See, e.g., Gideon v. Wainwright, 372 U.S. 335 (1963); Tumey v. Ohio, 273 U.S. 510 (1927). Those cases contained a "'defect affecting

5

the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" Neder, 527 U.S. at 8 (quoting Arizona v. Fulminante, 499 U.S. 279, 310 (1991)). Such errors "'infect the entire trial process,'" Neder, 527 U.S. at 8 (quoting Brecht v. Abrahamson, 507 U.S. 619, 630 (1993)), and "'necessarily render a trial fundamentally unfair.'" Neder, 527 U.S. at 8 (quoting Rose v. Clark, 478 U.S. 570, 577 (1986)).

By contrast, Neder held that an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. The Neder Court therefore held that the harmless error review codified at Rule 52(a) applies when a trial court erroneously instructs a jury that materiality is a question of law to be resolved by the court rather than a question of fact to be resolved by the jury.

Under the test set forth in Chapman v. California, 386 U.S. 18 (1967), to determine whether a constitutional error is harmless, a reviewing court must decide whether the record shows "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. at 24. In other words, an "otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).

Turning first to McLaughlin's conviction under 29 U.S.C. § 439(b), we note that the United States must prove that the defendant submitted a required document or report in which he "'knowingly fail[ed] to disclose a material fact.'" A fact is "material" if it has "'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" Gaudin, 515 U.S. at 509 (quoting Kungys v. United States, 485 U.S. 759, 770 (1988)). Moreover, the issue is whether an omission was capable of influencing and not whether the omission actually exerted any influence on the factfinder. Thus, an omission can be material even if no one actually relied on it. In re Cohn, 54 F.3d 1108, 1114 (3d Cir. 1995).

McLaughlin was charged under 29 U.S.C. § 439(b) with failing to disclose certain items on a required annual public disclosure report, known as an "LM2 report," which he had prepared and filed on EMCAL's behalf with the DOL. Such reports are the means by which the DOL, union members, and the general public obtain financial information about a particular union. In an LM2 report, a union must disclose, among other things, disbursements it has made to its officers – including salaries, reimbursed expenses, and direct or indirect payments. Here, the Government alleged that McLaughlin had omitted $11,099.04 on the 1993 LM2 report – $6,547.62 in alleged reimbursements McLaughlin received from EMCAL for meals, mileage, parking

and tolls, and $4,551.42 in alleged life, health, and retirement benefits.

McLaughlin notes that the verdict form that was eventually submitted to the jury with respect to the 29 U.S.C. § 439(b) count did not subdivide or otherwise break down the various alleged reimbursements and benefits that he had purportedly failed to report in the 1993 LM2 report. Rather, the verdict form simply asked for a decision of guilty or not guilty. He points out that at sentencing the District Court, for purposes of calculating a loss amount as to the embezzled funds, gave him "credit" for several expected pay increases that he had foregone as President by offsetting his foregone salary increases against the extra benefits and remuneration McLaughlin had fraudulently received. McLaughlin argues that in light of the District Court's crediting at sentencing, this court should find that he had disclosed approximately 90% of his earnings and reimbursements, and thus that the jury, properly instructed, may not have found that the omitted information was "material."

McLaughlin's argument is flawed. First, his 90% calculation is dubious. In arriving at this figure, McLaughlin makes multiple unwarranted inferences and conclusions. Second, it is unclear how the District Court's calculation of loss amount as to the embezzled funds (the subject of one of the crimes) is in any way related to the monetary value of the reimbursements and benefits McLaughlin failed to disclose in the 1993 LM2 report (the subject of the

other crime at issue).

More fundamentally, even if we were to conclude that McLaughlin's 90% figure was correct, there can be no conclusion but that the omitted information in the LM2 report was material. McLaughlin argues that the total monetary value of the omitted information was small in comparison with his total salary and EMCAL's total expenditures for 1993. This however, is irrelevant. As noted by the United States Court of Appeals for the Sixth Circuit:

> The fact that the misstated amounts are relatively small when compared with total union expenditures is not particularly relevant to the issue of materiality. Instead, the relevant inquiry is whether the false information is of the type that is capable of influencing a decision of an agency, as opposed to an examination of the magnitude of the falsehood.

Hughes v. United States, 899 F.2d 1495, 1499 (6th Cir. 1990); see also United States v. Norris, 749 F.2d 1116, 1122 (4th Cir. 1984) (stating, in context of 18 U.S.C. § 1001, "it is not the size of the payments but it is the act of making a false statement about the payments that is material"). Certainly, the undisclosed information in the LM2 report was capable of influencing the decision of the decisionmaking body to

7

which it was addressed. Gaudin, 515 U.S. at 509. Under 29 U.S.C. § 431(b)(3), McLaughlin was required to disclose all of the reimbursements and benefits he received from EMCAL. His omissions were therefore material.

We reach the same conclusion with respect to McLaughlin's conviction for perjury under 18 U.S.C. § 1623, based on his testimony during the first trial that Martello had used the charge card to make a legitimate union purchase at Staples. On appeal, McLaughlin argues that his primary defense at that trial to the 29 U.S.C. § 501(c) charges was that every expenditure made with the charge card was a legitimate EMCAL expense. Thus, he continues, his testimony that other union officials used the charge card was tangential to his theory of the case. Because this defense revolved around the legitimacy of the charged expenditures, not the identity of the charge card's user, McLaughlin argues that his statements regarding Martello's purported use of the charge card were immaterial. He also suggests that the jury's inability to return a verdict after the March trial calls into question the materiality of his lies.

We do not find McLaughlin's arguments convincing. Whether or not union officials other than McLaughlin had used the charge card was an important issue at the March 1999 trial. Testimony suggesting that other individuals had used the charge card was capable of raising doubts in jurors' minds as to whether McLaughlin was guilty. McLaughlin's

testimony respecting Martello and the receipt, which directly contradicted Martello's trial testimony that he had been unaware of the existence of the charge card, was plainly capable of influencing the jury.

We also find McLaughlin's argument regarding the March 1999 mistrial unpersuasive. The fact that the March 1999 jury was unable to return a verdict is not germane to the issue of whether the jury in the second trial would have found materiality if given the opportunity to have done so.

In sum, it is patent that McLaughlin's false testimony respecting Martello's use of the charge card had a natural tendency to influence and was capable of influencing the decision of the decisionmaking body to which it was addressed, Gaudin, 515 U.S. at 509. We are satisfied that a properly instructed jury could not have found otherwise. Thus, although the District Court incorrectly instructed the jury, we conclude that the record shows "beyond a reasonable doubt that th[is] error . . . did not contribute to the verdict obtained." Chapman, 386 U.S. at 24.

### III.

McLaughlin also argues that his counsel provided ineffective assistance by losing a critical piece of evidence and in turn by stipulating to damaging facts regarding the evidence.

8

It is well settled in this court that Sixth Amendment ineffective assistance of counsel claims under Strickland v. Washington, 466 U.S. 668 (1984), are generally not entertained on a direct appeal. See, e.g., United States v. Headley, 923 F.2d 1079, 1083 (3d Cir. 1991). This refusal to entertain Strickland claims on direct review stems from the reality that "such claims frequently involve questions regarding conduct that occurred outside the purview of the district court and therefore can be resolved only after a factual development at an appropriate hearing." Gov't of Virgin Islands v. Zepp, 748 F.2d 125, 133 (3d Cir. 1984) (internal quotations and citations omitted); see also United States v. Theodoropoulos, 866 F.2d 587, 598 (3d Cir.1989) ("[T]he proper avenue for pursuing such a claim is through a collateral proceeding.").

We have, however, recognized a narrow exception to the rule that a defendant cannot argue on direct appeal that counsel's performance failed constitutional standards. As we stated in Headley, "[W]here the record is sufficient to allow determination of ineffective assistance of counsel, an evidentiary hearing to develop the facts is not needed." 923 F.2d at 1083. This case does not fit into this narrow exception.

The record must be developed as to the facts surrounding counsel's possession and storage of Defense Exhibit 2, as well as the cause or causes of its loss. Similarly, on the record before us, we cannot determine the reasonableness of counsel's stipulation that the photocopy of Defense Exhibit 2 (introduced as Government's Exhibit 282 at retrial) and the merchant's copy of a receipt received from Staples' corporate headquarters (Government's Exhibit 265-A at the retrial) were, in fact, part of the same multi-page receipt. Where a claim of ineffective assistance of counsel is based on attorney incompetence, the lack of a fully developed record often precludes a comprehensive inquiry into the elements of strategy or tactics that may have entered into defense counsel's challenged decision. Zepp, 748 F.2d at133.

Neither aspect of McLaughlin's Strickland claim fits into that narrow class of ineffectiveness claims amenable to review on direct appeal. McLaughlin's ineffective assistance of counsel claim is thus premature.

**IV.**

For the reasons set forth, we will affirm the District Court's judgment of conviction and sentence and dismiss without prejudice the appeal to the extent that it claims ineffective assistance of counsel.