NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 10-2026
_____

HERED LLC,
                    Appellant

v.

SENECA INSURANCE COMPANY, INC.

_____

On Appeal from the United States District Court for the Middle District of Pennsylvania
District Court No. 06-cv-00255
District Judge: The Honorable Thomas I. Vanaskie

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 24, 2011

Before: FUENTES and CHAGARES, Circuit Judges, and POLLAK*, District Judge

(Filed: March 31, 2011)

_____

OPINION
_____

FUENTES, *Circuit Judge.*

        Hered LLC is the owner of a 175,000 square foot building that includes a storage

facility and a convention center located at 601 S. Poplar Street, Hazleton, Pennsylvania.

_____

*Honorable Louis H. Pollak, Senior District Judge for the U.S. District Court for the Eastern District of
Pennsylvania, sitting by designation.

On February 5, 2005, a fire occurred at these premises. Hered then filed a claim with its insurance provider, Seneca Insurance Company, for approximately $3,462,179. For nearly a year, the parties disputed the amount of the damages, and on February 2, 2006, Hered filed a two-count complaint in the District Court. Count One alleged that Seneca breached the terms of the insurance policy by failing to fully pay out Hered's claim. In Count Two, Hered alleged that Seneca's decision to deny Hered's full claim was made in bad faith and sought damages pursuant to 42 Pa. Cons. Stat. Ann. § 8371. On February 16, 2006, Seneca issued a final denial of Hered's claim, citing three reasons: Hered had made misrepresentations during the application process; the automatic sprinkler system was not operating at the time of the fire in violation of the Protective Safeguard Endorsement provision; and the building fire loss claim was grossly, unreasonably and intentionally overstated. The parties proceeded to trial and on July 23, 2009, a jury found in favor of Seneca.

On appeal, Hered argues that the District Court erred by: (1) denying Hered's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 and motion for a new trial pursuant to Rule 59; (2) inaccurately responding to a jury question; and (3) admitting prejudicial evidence.

**I.**

Because we write solely for the parties, we will discuss only the facts and proceedings to the extent necessary for resolution of this case.[1] The issues in this case

---

[1] The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and § 1294(a).

relate to Hered's application for insurance coverage, and thus we begin by setting forth those circumstances.

Hered's first insurance policy was issued by Peerless Insurance Company ("Peerless") in March 2004. In October of 2004, Peerless cancelled Hered's insurance, citing nonpayment of the premiums and Hered's failure to update Peerless on repairs to the building's sprinkler system. This led Hered to seek new insurance coverage through its insurance broker, Collins Insurance, Inc. On November 8, 2004, Collins, on behalf of Hered, submitted an insurance application to W.N. Tuscano Agency, Inc. ("Tuscano"), an insurance wholesaler that represented Seneca. Hered's application for insurance stated only that Hered's prior insurance coverage had been terminated for non-payment. In addition, Hered left blank the part of the application that inquired about the building's sprinkler system. The application was signed by Roger Soler, Hered's principal. After receiving the application, a Tuscano agent spoke with an agent at Collins regarding the blank portion of the application. The Collins agent informed the Tuscano agent that the building was "sprinklered." Tuscano then submitted Hered's application to Seneca via an email stating that the property was "a sprinklered building used as a flea market."

Seneca responded by sending Tuscano a quote for insurance. The quote stated that it was conditioned upon the submission of a "NEW & COMPLETE" application and a satisfactory inspection. On November 10, 2004, Tuscano submitted that quote to Collins. On November 12, 2004, Soler signed and accepted the Seneca quote on behalf of Hered. Seneca bound coverage as agreed, and issued a policy that was effective as of November

12, 2004, (Policy No. ESP15001558, providing up to $6.5 million in coverage). On November 29, 2004, Tuscano forwarded a copy of the insurance policy to Collins. Seneca never asked Hered to complete a new application.

Following Hered's acceptance of the policy, two inspections of the property were conducted. The first inspection was undertaken on November 24, 2004, by ISI Insurance Services on behalf of Hered's liability carrier, Essex Insurance Company. During the inspection, Soler represented that an outside company had conducted a flow test of the sprinkler system within the previous ninety days. Soler also stated that the sprinkler heads were scheduled to be changed within the next sixty days. The final ISI report contained the following information:

> There is a dry sprinkler system that protects the entire building. There are approximately 1,100 sprinkler heads. All sprinkler heads are scheduled to be changed, within the next 60 days. An outside company has most recently conducted a flow test of the sprinkler system within the past 90 days and will continue to do so on an annual basis. The post indicator valve of the sprinkler system was not accessible to inspector.

Seneca received the ISI report on January 10, 2005.

On January 21, 2005, the Hered property was inspected by Thomas Czarnowski, a representative from H & S Technical Services, on behalf of Seneca. The inspection yielded the following information: (1) tags indicating that the sprinkler system had last been inspected in the 1990s; (2) no pressure in the sprinkler system; and (3) evidence that the sprinkler heads had been painted over. When Czarnowski asked Soler, who was present, about the absence of pressure in the sprinkler system, Soler stated that the fire marshal had recently inspected the building. Czarnowski drafted a report recommending

4

that an expert be hired to determine whether the sprinkler system was operational. Seneca received the H & S report on February 7, 2005.

Also on February 7, 2005, Seneca received a Property Loss Notice from Hered notifying it that on February 5, 2005, a fire had damaged the insured property. For several months, the parties disputed the amount and value of the damages.[2] On February 2, 2006, Hered filed a complaint alleging non-payment of the insurance coverage and asking for damages in excess of $3.4 million.

On February 16, 2006, Seneca denied Hered's claim in its entirety, demanded return of the advance payments, and asserted that the policy was void *ab initio*. Seneca based its denial of coverage on three reasons: (1) Hered and its representatives made misrepresentations during the application process relating to the status of the sprinkler system; (2) the fact that the sprinkler system was not functional at the time of the fire constituted a violation of the policy's Protective Safeguard Endorsement provision and thus insurance coverage was suspended at the time of the loss; and (3) Hered's loss claim was grossly, unreasonably, and intentionally overstated.

On May 24, 2006, Seneca filed an Answer and Counterclaim. On November 29, 2007, Hered filed a motion for summary judgment. Seneca filed its cross-motion for summary judgment the following day. On September 9, 2008, the Magistrate Judge issued a 73-page report and recommendation. On February 13, 2009, the District Court denied Hered's motion for summary judgment and Seneca's motion for summary

---

[2] Hered submitted its final claim for damages on October 10, 2005 asking for $3,416,179. Seneca estimated that the loss amount was $168,543.

judgment was granted with regard to Hered's allegation of bad faith, but denied in all other respects.

A jury trial commenced on July 14, 2009. On July 19, 2009, Seneca filed a motion for judgment as a matter of law. On July 21, 2009, Hered also filed a motion for judgment as a matter of law, raising essentially the same arguments contained in its motion for summary judgment. The District Court refrained from ruling on the motions until after the close of trial. On July 23, 2009, the jury issued a verdict in favor of Seneca. The jury found the following: (1) Seneca had proven by clear and convincing evidence that Hered made material misrepresentations of fact in the process of applying for insurance coverage with Seneca and (2) Hered had failed to prove by a preponderance of the evidence that Seneca waived its right to deny coverage on the basis of material misrepresentations in the application process.

A number of post-trial motions were filed. On March 18, 2010, the District Court heard oral argument on Seneca's motion to alter judgment pursuant to Rule 59(e) and Hered's motions for a new trial pursuant to Rule 59 and for judgment as a matter of law pursuant to Rule 50. That same day Judge Vanaskie issued a written order denying both Hered's motions and Seneca's motion to amend the judgment. Hered filed this timely appeal.

## II.

### A.

We begin with Hered's appeal from the denial of its motion for judgment as a matter of law. Hered argues that the District Court erred in denying this motion, and that

judgment as a matter of law is appropriate on three grounds: (1) Seneca could not meet its burden of proof of showing fraud or misrepresentation; (2) Seneca waived its right to assert the misrepresentation defense by accepting an incomplete application for insurance; and (3) Seneca waived its right to rescind the policy pursuant to the policy's "Protective Safeguard Endorsement." We address each of these arguments in turn.

Under Rule 50, judgment as a matter of law is appropriate when:

> (1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> > (A) resolve the issue against the party; and
> > (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50. "We exercise plenary review of the grant of a motion for judgment as a matter of law and apply the same standard as the district court." Wittekamp v. Gulf & Western Inc., 991 F.2d 1137, 1141 (3d Cir. 1993). A Rule 50 motion "should be granted only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." McGreevy v. Stroup, 413 F.3d 359, 364 (3d Cir. 2005) (citing Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)). "[J]udgment as a matter of law should be granted sparingly." Ambrose v. Twp. of Robinson, 303 F.3d 488, 492 (3d Cir. 2002) (citations omitted). "[T]he question is not whether there is literally no evidence supporting the party against whom the motion is directed but

7

whether there is evidence upon which the jury could properly find a verdict for that party." Id. (citations omitted).

To succeed on its claim of fraud or misrepresentation, Seneca needed to prove, by clear and convincing evidence, that: (1) Hered made a false statement; (2) the false statement was made knowingly or in bad faith; and (3) the subject matter of the statement was material to the insurance transaction. Tudor Ins. Co. v. Twp. of Stowe, 697 A.2d 1010, 1016 (Pa. Super. Ct. 1997). Hered submits that there was no testimony or evidence presented at trial that it made "any verbal or written misrepresentation or false statement regarding the sprinkler system." Appellant Br. 24.

Viewing all of the facts in the light most favorable to Seneca, we conclude that the District Court correctly found that there was sufficient evidence of misrepresentation on the part of Hered for the jury to consider the issue. The evidence at trial showed the following: (1) Hered and its insurance broker, Collins, submitted an incomplete application for insurance that failed to answer a question about building protection; (2) the application was submitted to Debra Fleming at Tuscano, Seneca's insurance broker; (3) after discovering the blank portion of the application, Fleming spoke with an agent at Collins who informed Fleming that the building was "sprinklered," App. 1037; 1182; and (4) in conveying Hered's insurance application to Seneca, Fleming advised Seneca that the building was "non-combustible and sprinklered." App. 1036. Although there was some evidence supporting Hered's argument that "sprinklered" referred only to a building containing a sprinkler system, there was also evidence that the term "sprinklered" is generally understood to refer to an *operational* sprinkler system. App.

8

1182-83, 1420-21, 656-58. Thus, Seneca provided sufficient evidence for a reasonable jury to conclude that the statements made by Hered were false.

Seneca also presented evidence dating to Hered's relationship with its *prior* insurance provider, Peerless, that satisfied the other two elements of this cause of action. That evidence consisted of the following: (1) in March of 2004, Soler hired Collins to obtain insurance coverage; (2) as part of that process, Collins submitted an application that contained the number "100" in the box marked "% SPRINK"; (3) Hered's application included Soler's signature; (4) Peerless discovered that the sprinkler system at the Hered building was not operational and thus refused to give Hered credit for a premium reduction ordinarily available for buildings containing operational sprinkler systems; (5) Soler had informed Peerless that it would endeavor to repair the system and to make it operational by June 22, 2004; and (6) Soler had contracted with G.C. Fire Protection Systems, Inc., to repair the sprinkler system. Peerless eventually cancelled Seneca's insurance policy for failure to pay insurance premiums and failure to update Peerless on the operability of the sprinkler system. This evidence lends support to Seneca's argument that Hered was aware that the sprinkler system did not work when it applied for insurance and intentionally misrepresented the state of the system in order to receive lower insurance premiums from Seneca.

Given this evidence and this Court's admonition that a Rule 50 motion "should only be granted if the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief," Raiczyk v. Ocean County Veterinary

9

Hosp., 377 F.3d 266, 269 (3d Cir. 2004) (internal quotation marks and citation omitted), we find that the District Court did not err by denying Hered's motion.

Hered's second argument is that judgment as a matter of law should have been granted because Seneca waived the right to assert the misrepresentation defense by accepting an incomplete application and issuing the insurance policy nonetheless. Hered submits that the law bars claims of verbal misrepresentation of the type Seneca asserts here because Seneca chose to issue an insurance policy even though the portion of Hered's insurance application relating to the sprinkler system was incomplete. We are not persuaded by this argument. As a general rule, "the question of whether an insurance company has waived its right to rescind a contract or policy is a question of fact." Matinchek v. John Alden Life Ins. Co., 93 F.3d 96, 102 n.6 (3d Cir. 1996) (citing cases). This is because, "under Pennsylvania law, for an insurer's failure to rescind to amount to a waiver of the right to rescind, 'there must be sufficient knowledge disclosed to the insurer that there is some falsity in the statement by the insured or something of some significance which would put a reasonably prudent person on notice to make further inquiry.'" Id. at 102 (citing First Penn, Banking and Trust Co. v. U.S. Life Ins. Co., 421 F.2d 959, 963 (3d Cir. 1969)). In short, the duty to request clarification of an imperfect answer exists only "if the [insurance company] was in possession of information warning it of the falsity of the answers in the application would the duty devolve upon it to make independent inquiry or be held bound by the knowledge such inquiry would have disclosed." Franklin Life Ins. Co. v. Bieniek, 312 F.2d 365, 375 (3d Cir. 1972).

10

Whether Hered's assertions regarding the status of the sprinkler system should have put Seneca on notice of the falsity of the information in the application was an issue for the jury to decide because there was evidence on both sides. Although Hered's insurance application left the sprinkler question blank, Seneca followed up by obtaining assurance from Hered's broker that the building was "sprinklered." There was evidence that the term "sprinklered" referred to a functional sprinkler system. Hered submits that Seneca knew that the sprinkler system was not operational when it received the ISI and the H & S reports. Yet the ISI report, the only report Seneca received *before* the fire, stated only that a sprinkler system existed and that the sprinkler heads were scheduled to be changed within the next 60 days, and that an outside company "recently conducted a flow test of the sprinkler system in the past 90 days." Seneca received the H & S report *after* the fire, and thus that report could not have put Seneca on notice that the sprinkler system did not function.

In light of this competing evidence, whether "there [was] sufficient knowledge" for Seneca to have waived this argument was an issue properly left to the jury.

Hered's Rule 50 motion also sought judgment as a matter of law on the ground that Seneca waived its right to rescind the policy pursuant to the Protective Safeguard Endorsement contained in the policy. The "Protective Safeguard Endorsement" provided as follows:

> 1. This insurance will be automatically suspended at the involved location if you fail to notify us immediately when you:
>> 1.1 Know of any suspension or impairment in the protective safeguards; or

11

> 1.2 Fail to maintain the protective safeguards over which you have control in complete working order.
>
> If a part an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

The policy specified that the protective safeguard at issue was an "AUTOMATIC SPRINKLER SYSTEM." Seneca denied Hered's claim for damages on the ground that Hered had failed to inform Seneca that the sprinkler system did not function, and thus the insurance policy was not in effect at the time of the fire. Hered argues on appeal, as it did in the District Court, that the testimony at trial showed that, although Seneca possessed two separate reports informing it that the sprinkler system was inoperable, appellee continued to issue coverage and accept premiums. Therefore, there was no genuine issue of material fact "for the Jury to decide upon the issue of waiver." Appellant Br. 28.

Again, we conclude that the District Court correctly denied Hered's Rule 50 motion. In this case, both parties offered evidence at trial relating to when Seneca learned that the sprinkler system was not operational. Seneca argues that it did not definitely learn that Hered's sprinkler system did not work until November 9, 2005, while Hered argues that the two reports put Seneca on notice of the problem. Given that the testimony and evidence offered by both parties at trial could support either party, the District Court properly left this issue to the jury.

**B.**

12

We now turn to Hered's argument that the District Court erred in its response to a question asked by the jury during deliberations and that a new trial is required.

During the course of its deliberations, the jury sent the following question to the court: "Please clarify the scope of the application process. Does this include the time necessary for an inspection and report and insurer's consideration?" App. 1682. Hered argued then, as it does now, that the term "application process" in this question referred to the language in Seneca's insurance quote stating the policy was "subject to satisfactory inspection and complete application." App. 1682-83. Hered urged the District Court to inform the jury that the "application process" did not conclude until the two inspections had been completed. The court explained that it had used the term "application process" throughout the trial to refer to the time *before and up to* the issuance of the policy, and rejected Hered's proposed answer. App. 1683. Instead, the court issued the following response: "In this case, the application process did not include the inspection report and insurer's consideration of that report. The application process concluded with the issuance of the policy." App. 1683-84. Hered argues that the District Court's response essentially directed the jury not to consider the H & S and ISI inspections as evidence of Seneca's waiver, which was relevant to whether Seneca waived its right to deny coverage on the basis of material misrepresentations. Hered made these same complaints at the post-trial motions hearing, but the District Court rejected Hered's Rule 59 motion for a new trial. We will affirm.

"[W]e review jury instructions for abuse of discretion." Armstrong v. Burdette Tomlin Memorial Hosp., 438 F.3d 240, 245-46 (3d Cir. 2006) (citing United States v.

McLaughlin, 386 F.3d 547, 551-52 (3d Cir. 2004)). "However, our review is plenary when the issue is whether the instructions misstated the law." Armstrong, 438 F.3d at 245 (citing McLaughlin, 386 F.3d at 552). "Harmless errors in parts of a jury charge that do not prejudice the complaining party are not sufficient grounds on which to vacate a judgment and order a new trial." Id. (citing Watson v. S.E. Pa. Transp. Auth., 207 F.3d 207, 221-22 (3d Cir. 2000).

We must also keep in mind the precepts of a Rule 59 motion. Rule 59 provides for a new trial as follows:

> (1) *Grounds for New Trial.* The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:
> (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or
> (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

Fed. R. Civ. P. 59(a). Under Rule 59, a new trial may be granted if "the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the court's] conscience." Greenleaf v. Garlock, Inc., 174 F.3d 352, 366 (3d Cir. 1999).

We find that the District Court did not err in giving this instruction and no new trial is warranted under Rule 59. In referring to the application process as concluding with the issuance of the policy, the District Court was being consistent with how the term had been used throughout the trial. The court's response was also consistent with the chronology of this case. By its terms, Seneca's insurance policy became effective on November 12, 2004. To find that the "application process" was not complete until

14

months *after* Hered started paying premiums and the policy was issued—as Hered urged—would have been illogical.  Thus, the District Court did not err in informing the jury that the "application process" was complete when the policy was issued.

**C.**

Finally, Hered argues on appeal that the District Court erred in permitting testimony about two issues:  (1) Hered's nonpayment of the Peerless insurance policy and (2) a collateral arbitration proceeding brought against Hered for nonpayment of services relating to the repair of the sprinkler system.  Hered argues that this testimony was unfairly prejudicial and that a new trial is required.  We have carefully considered the arguments of counsel on these issues and find no abuse of discretion in the court's rulings.

**III.**

For the reasons above, we will affirm the District Court's order.