NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3768
_____

UNITED STATES OF AMERICA

v.

YUJIE DING,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court Crim. No. 2-15-cr-00035-001)
Honorable Harvey Bartle, III, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
November 6, 2018

BEFORE:  HARDIMAN, KRAUSE, and GREENBERG, Circuit Judges

(Filed: November 19, 2018)
_____

OPINION*
_____

GREENBERG, Circuit Judge.

I.  INTRODUCTION

_____

*This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

This matter comes on before this Court on an appeal in a criminal case from a conviction and sentence following a jury trial in the Eastern District of Pennsylvania for wire fraud. See 18 U.S.C. § 1343. Defendant-Appellant, Yujie Ding, challenges the District Court's denial of his motion for acquittal. Ding contends that the evidence at the trial was insufficient to support the verdict. For the reasons stated below, we will affirm.

## II.  FACTUAL BACKGROUND

We set forth the germane facts but note that the District Court set them forth at greater length in its comprehensive opinion denying the motion for acquittal. See United States v. Ding, No. 15-cr-0035, slip op. at 2-37 (E.D. Pa. entered April 22, 2016) (App. 8-21). The case arises from Ding's efforts to secure federal funding to develop a sensor to detect atmospheric gases in space. Arklight, a company that Ding owned, applied for a research grant from NASA under its Small Business Innovation Research ("SBIR") Program. The SBIR program exclusively funds small businesses, which are defined as for-profit entities with less than 500 employees. The goal of the program is to spur innovation in the private sector, particularly among minority-owned small businesses. Thus, large entities such as universities are ineligible for the program, and grant recipients are required to perform a majority of the funded work by themselves, not through subcontractors.

Ding was a well-respected and long-time professor of electrical engineering at Lehigh University. His wife, codefendant Yuliya Zotova ("Zotova"), the president of Arklight, was a scientist with a Ph.D. in nonlinear optics and optoelectronics. In an

2

application to obtain SBIR funding for Arklight, Ding and Zotova certified that Zotova

would be the principal investigator for the project, and she, along with an optical engineer

to be hired, would perform a majority of the funded work. The principal investigator is

the individual mainly responsible for carrying out the project for which funding is sought.

The application represented that a minority portion of the project would be subcontracted

out to Lehigh University, specifically to the research lab that Ding headed at the

university. Based in part on the certification, NASA awarded Arklight research grants to

develop the sensor.

The evidence showed, however, that Zotova did little or no work for Arklight.

Instead, graduate students and research fellows at Ding's lab performed almost all of the

work to develop the sensor. Indeed, the evidence did not show that Arklight actually

hired an optical engineer for the project as it stated was its intention in its application.

The indictment was based on the theory that but for Arklight's false promise to perform a

majority of the work, NASA would not have awarded Arklight the research grants and

reimbursed its costs. The indictment included ten counts of wire fraud, each

corresponding to separate invoices that Arklight submitted electronically to NASA for

reimbursement of costs.[1] In essence, the government contended that Arklight was simply

a shell company to pass the funding to Ding's research lab at the university. Witnesses

from NASA testified that without a doubt a small business would not have received SBIR

funding absent certification that it was responsible for a majority of the development

---

[1] NASA also required the same work certification to be attached to each invoice
submitted and Arklight did so for all but two of the invoices.

3

work.  The jury convicted Ding and Zotova on six of the ten counts of wire fraud but acquitted them on the other counts.

After the jury returned partial guilty verdicts against both defendants, Ding filed a motion for entry of a judgment of acquittal arguing that (1) by finding him guilty on only six of ten counts, the jury's verdict was inconsistent, thus requiring an acquittal on all counts, and (2) evidence at the trial was insufficient to support the guilty verdict.[2]  The District Court denied the motion.  On this appeal Ding only raises the sufficiency of evidence argument as he claims that the evidence "was insufficient to convict [him] because the errors and or misstatements in the [grant] proposed . . . were not material to the awarding of the contract."  Appellant's br. 3.

The District Court sentenced Ding to a one-year and one-day term of incarceration followed by a one-year term of supervised release and a fine of $3,000.  In addition, it required him to make restitution of $72,000 and to pay a special assessment.  The Court sentenced Zotova to a lesser term.  Only Ding has appealed.  The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291.

## III.  DISCUSSION

The fraud statute, 18 U.S.C. § 1343, makes it a crime to

> devise[] or intend[] to devise any scheme or artifice to defraud, or for
> obtaining money or property by means of false or fraudulent pretenses,
> representations, or promises, [by] transmit[ing] or caus[ing] to be
> transmitted by means of wire, radio, or television communication in

---

[2] Zotova also unsuccessfully moved for a judgment of acquittal but inasmuch as she has not appealed, we confine our discussion to Ding's case.

4

interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

To prove that a defendant committed a crime under this statute, the government must establish "(1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of . . . interstate wire communications in furtherance of the scheme." United States v. Andrews, 681 F.3d 509, 518 (3d Cir. 2012) (alteration in original) (internal quotation marks omitted) (quoting United States v. Antico, 275 F.3d 245, 261 (3d Cir. 2001)). In addition, "materiality is an element of the federal . . . wire fraud . . . statute[]." United States v. McLaughlin, 386 F.3d 547, 553 (3d Cir. 2004) (citing Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827 (1999)). "[T]he well-settled meaning of 'fraud' require[s] a misrepresentation or concealment of *material* fact." Neder, 527 U.S. at 22, 119 S.Ct. at 1840 (emphasis in original). And in this context, a particular misrepresentation is "material if it has 'a natural tendency to influence or [is] capable of influencing, the decision of the decision-making body to which it was addressed.'" Id. at 16, 119 S.Ct. at 1837 (alteration in original) (quoting United States v. Gaudin, 515 U.S. 506, 509, 115 S.Ct. 2310, 2313 (1995)).

Ding argues that the District Court erred in denying his motion for acquittal, contending that there was insufficient evidence at trial to establish that his falsehood, namely the fraudulent representation of how Arklight would perform its work, was material, i.e., that rather than performing the work in-house it was performed by students. When we consider this contention we remember that "[w]e apply a 'particularly

5

deferential' standard of review to a challenge to the sufficiency of evidence supporting a jury verdict." United States v. Gonzalez, 905 F.3d 165, 179 (3d Cir. 2018) (quoting United States v. Peppers, 302 F.3d 120, 125 (3d Cir. 2002)). "Under this standard, we will affirm the verdict 'if any rational juror could have found the challenged elements beyond a reasonable doubt, viewing the evidence in the manner that is most favorable to the government, neither reweighing evidence, nor making an independent determination as to witnesses' credibility.'" Id. (quoting Peppers, 302 F.3d at 125).

Ding's argument is puzzling because there was clear affirmative evidence of materiality. NASA witnesses testified that a small business only can receive SBIR funding by certifying it would perform majority of the work. Ding's misrepresentation with respect to Zotova's anticipated participation in the project as principal investigator, therefore was most definitely material because without it, Arklight would not have received SBIR funding. In order to accept Ding's argument, we would have to conclude that NASA witnesses greatly overstated the importance of the certification with respect to Zotova's anticipated functioning, which we will not do on appellate review.

We realize that Ding argues:

> The work was performed. The payments were within the scope of the program. Even if the defendants, through Arklight, were just a 'pass through' to obtain funding, the principal goals of the project and the SBIR program were accomplished. In short, Arklight was a small business who submitted and executed valid proposals with NASA through the SBIR program.

Appellant's br. 17. When we consider his argument generously we treat Ding as not actually challenging the materiality of his misrepresentation—rather, he essentially is

6

challenging the verdict with respect to his intent to defraud. In effect, he argues that he had no motive to lie, because he received little to no financial gain from the alleged fraud, nor did he ever intend to receive any financial gain at all. As such, he contends that without evidence of motive, the government failed to prove intent. There is some factual basis for his argument because evidence supported his lack of financial gain from the fraud. In this regard, even though Arklight was awarded $700,000 in total funding, the District Court required that he pay only a small fraction of that amount in restitution, because most of the funds advanced in the grant actually were used to develop the sensor. See App. 1748, 1752. But still we have no trouble finding that there was ample evidence of Ding's intent to defraud. After all, Ding was seeking a source of funds for his research and his misrepresentation made this possible. To the government, it was highly material who would perform the work. Thus, the fact that the work was done did not establish that any default with respect to who performed the work was not material.

The order of April 22, 2016, and the judgment of conviction and sentence entered September 29, 2016, will be affirmed.